Cheatem Johnson, a car unloader, employed by Hogsett Company, Inc., and working in the unloading of a freight car alongside the elevated roadway which extends alongside the sheds of the Market street wharf of the Port of New Orleans, sustained physical injuries on the morning of May 1st, 1940, when he came into contact with an automobile owned by John E. Rolland, which was being driven by Rolland on the said roadway.
Alleging that the automobile had run into him and that this had resulted from negligence on the part of Rolland, Johnson brought this suit against him, claiming damages in the sum of $2,744.18. General Accident Fire Life Assurance Corporation, Ltd., of Perth, Scotland, intervened, alleging that it had issued to Hogsett Company, Inc., a policy of workmen's compensation insurance and that under that policy it had paid to Johnson compensation during the period of his disability and had paid medical expenses — the whole totaling $260.68 — and praying that there be judgment in its favor and against Rolland for that amount, together with a reasonable attorney's fee.
Rolland denied all charges of negligence and, in the alternative, averred that if he had been in any way at fault, that fault on his part had not been the proximate cause of the accident, and that the proximate cause had been the contributory negligence of Johnson himself in several particulars set forth in the answer. There was judgment below dismissing the suit.
Johnson filed a petition for and obtained a devolutive appeal and in his petition alleged that the intervenor also had been aggrieved by the judgment and that, therefore, he, Johnson, desired to appeal from the judgment on behalf of the intervenor.
We shall first describe the place at which the accident took place.
The covered sheds of the Market Street wharf at the Port of New Orleans extends back from the river to a paved concrete roadway which is shown to be 29' 7" wide at that point and which is on the City side of the sheds and is parallel to a railroad track on which freight cars are placed for loading or unloading. The paved roadway is level with the floor of the wharf sheds and is elevated above the railroad track so that when a freight car is placed *Page 687 
on the track its floor is level with the roadway.
Plaintiff was working in connection with a freight car which was standing on the track alongside the roadway and defendant was driving his car on the roadway in an uptown direction. As defendant approached the point at which the accident took place, the freight car was to his right and the wharf sheds to his left.
It is plaintiff's contention that he was pushing a hand truck across the roadway from the freight car to the wharf sheds when he was run into by defendant's automobile. Defendant maintains that the truth is that plaintiff was standing between the handles of his hand truck and was at the left or wharf side of the road and that as defendant's automobile passed him, plaintiff, for some unknown reason, backed into its side near the door.
There are many irreconcilable conflicts in the evidence. Plaintiff and some of his witnesses declare that on the hand truck which plaintiff was operating at the time was a barrel of asphalt and that, as plaintiff describes it, he "had made it across on the river side and when I went to dump this barrel off the truck, this man runned into me * * *". Defendant says that, as he approached the spot at which the accident occurred, there was in the roadway ahead of him a large derrick which occupied a considerable portion of the right-hand side of the road, and that this made it necessary for him to drive somewhat to the left; that he was stopped momentarily by an employee of a shipping company, which was operating the derrick, who was placed there for the purpose of making certain that vehicular traffic could pass with safety up and down the roadway between the derrick and the shed of the wharf; that this employee signalled to him to proceed and that he blew his horn and went forward at a slow speed; that, as he approached Johnson, he saw Johnson look towards him; that, at the time, Johnson and two other men were loading a small wooden platform upon Johnson's truck and that there was no barrel of asphalt present; that there was sufficient room for the automobile to pass in safety but that, just as it reached a point alongside Johnson, Johnson suddenly stepped backward into the side of the car.
Rolland's contention cannot be better set forth than it was stated by the District Judge when, during the course of the trial, he said to the attorney for the defendant: "I understand the testimony very clearly. Your client contends there was a derrick there, and the derrick came about twelve feet onto the roadway, and they had a man that stopped all traffic, and that he stopped on account of this derrick; that he went on when he was given a signal to go, and he had his car in low gear; Johnson was standing on the left hand side of the road, and that as he passed this man for some reason Johnson ran into his car."
There was some evidence to the effect that Rolland did not blow his horn and that he was driving at a high speed, and that his car proceeded a distance of nearly one hundred feet after the accident.
On the other hand, there is evidence to the effect that the horn was blown, that the car was going very slowly, and that it stopped within twenty feet after Johnson was struck.
We find nothing in the record which would justify the conclusion that there is any falsifying on either side or that any witness or group of witnesses is entitled to be believed in preference to any other witness or group of witnesses on the other side. There is one fact about which the record leaves no doubt whatever and that is that there was no dent or damage of any kind in the front of the automobile nor in its bumper or fender, and there was quite a dent just at the handle of the door. This fact, of course, is corroborative of defendant's contention that Johnson was not struck by the front of the car, but backed into it at or near the door after the front had passed him.
Had the judge a quo resolved these disputed questions of fact in plaintiff's favor, we would find ourselves unable to say from the record that his finding would have been incorrect, nor can we find fault in his resolution of these questions of fact in defendant favor. Surely, we cannot say that this record shows that, in deciding these questions of fact in favor of defendant, he committed manifest error.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
WESTERFIELD, J., absent, takes no part. *Page 688